JARRATT v. LANGSTON.

Opinion delivered June 19, 1911.

1. FRAUD—REMEDIES OF VENDEE.—One who is induced to purchase bank stock by the fraudulent representations of the vendor has the right to sue in equity to rescind such sale or at law to recover damages sustained by reason of such fraud. (Page 442.)

2. SAME—REPRESENTATIONS.—To be fraudulent, representations must be made by one who either knows them to be false, or else, not knowing, asserts them to be true, and made with intent to have the other party act upon them to his injury, and such must be their effect. (Page 442.)

3. SAME—RIGHT OF VENDEE TO RELY UPON VENDOR'S REPRESENTATIONS.— Though, in general, each party to a sale must seek such means of information as are open to both, yet, if the vendor has peculiar knowledge of the matter, the vendee is not required to test his representations, but may rely upon them. (Page 442.)

4. SAME—FRAUDULENT REPRESENTATIONS AS TO VALUE OF CORPORATE STOCK. —Where a vendee of corporate stock is wholly ignorant of its value and relies wholly upon the vendor's statements, such representations, if false and fraudulent, will constitute fraud, entitling the vendee to rescind. (Page 443.)

5. VENDOR'S LIEN—UNLIQUIDATED DEMAND.—A vendor's lien exists for the purchase of land only where the amount is fixed; the lien does not exist in behalf of an uncertain, contingent or unliquidated demand. (Page 443.)

6. SAME—WHEN EXISTS.—A vendor of land has a lien for the purchase money which continues until the entire purchase money is actually paid. (Page 444.)

7. SAME—WHEN EXISTS.—Where, through a vendee's fraudulent representations, a vendor sold land and received as a definite part of the agreed consideration certain corporate stock which the vendee knew to be entirely worthless, equity will enforce a vendor's lien upon the land, though the rule would be otherwise if the stock had some value. (Page 444.)

8. EQUITY—RETAINING JURISDICTION.—Where equity has jurisdiction of a case for one purpose, it will retain jurisdiction thereof for all purposes. (Page 446.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed.

*Winchester. & Martin,* for appellant.

Appellant's complaint stated a cause of action cognizable in equity. To the extent of the $1,500.00 of the capital stock of the Southern Bank & Trust Company mentioned in the deed as a part of the consideration, there was a total failure of consideration, and appellant was entitled to have a lien declared upon the land conveyed as for balance of purchase money. 6 N. Y. Ch. 324-335; 36 Barbour 195-200; 55 N. Y. 139-144. Appellant's acceptance of the stock in payment does not prevent her from asserting her vendor's lien if the stock was in fact worthless, and at the time she accepted same she relied on appellee's representations, and it was not necessary for her to offer to refund the money paid to her. 9 Wis. 429; 17 Fed. 301. The existence of a legal remedy does not prevent her resort to equity to have the balance of the consideration declared a lien on the land. 38 Mich. 487.

*Falconer & Woods,* for appellee.

1. Appellant's complaint gave her no standing in a court of equity. In the deed she reserved a lien for only two notes which have been paid, and took no security, nor reserved any lien, for the stock. She did not sue to rescind the contract, nor offer to return what had been paid to her, including the stock. If there was a partial failure of consideration, her remedy was to sue at

law for the amount thereof, or in equity to cancel and set aside the deed. 67 Ark. 526; 37 Ark. 348.

2. The complaint does not state a cause of action. To sustain an action for false representations, there must be a statement of an *existing fact* as distinguished from a statement of *opinion*. A bare statement of value is but an expression of opinion merely. The complaint's allegation that appellee represented the stock to be "worth its face value" is not sufficient to state a cause of action for false representations. 15 Am. Rep. 379; 105 U. S. 553; 60 Me. 578; 90 N. Y. 272; 43 Am. Dec. 166; 148 Mass. 504; 48 N. Y. Supp. 424, 98 N. Y. 167; 2 Pom. Eq. § 891 *et seq.;* 82 Ark. 20; 23 Fla. 243; 114 Mass. 99; 46 Wis. 415; 131 Mass. 138; 11 Ia. 233; 77 Am. Dec. 142; 20 Cyc. 51; 11 Ark. 58.

3. In order to maintain an action, appellant must have relied upon appellee's statement to her injury, and this the proof shows she did not do, but made other inquiry as to the value of the stock. 13 Wall. 379; 142 U. S. 43.

FRAUENTHAL, J. This was a suit instituted by the appellant in the Sebastian Chancery Court to recover from appellee an alleged balance claimed to be due upon the purchase money of a tract of land, and to enforce the vendor's lien therefor. The complaint alleged in substance that on October 28, 1905, appellant sold and conveyed to appellee a tract of land in Sebastian County for the agreed price of $4,500, which was to be paid in the following manner: five hundred dollars in cash, which was paid; fifteen hundred dollars of the capital stock of the Southern Bank & Trust Company; one note for $1,000 due six months after date; one note for $500 due twelve months after date; and the remainder by the assumption of a mortgage for $1,000 then existing on the land. The complaint further alleged that on the same day appellant executed to appellee a deed for the land, in which the consideration was recited as above set forth, and therein a lien was expressly retained upon the land for the payment of said two notes. Subsequently the said notes and mortgage indebtedness were paid. It was alleged that the appellant agreed to and did take the $1,500 capital stock of the Southern Bank & Trust Company at its face value, and to that extent as a part of the purchase price of the land, upon the representation and assurance made by

the appellee that said stock was of that value, and that he had paid that price therefor.

It was further alleged that at the time appellant received said stock it was as a matter of fact absolutely worthless, and that appellee knew it to be so, but, with the fraudulent purpose of inducing appellant to receive same in payment of $1,500 of the purchase price of said land, he falsely represented to her that the stock was of the value of $1,500, and that he had paid that amount therefor; that she was entirely ignorant of the condition of the Southern Bank & Trust Company and of the value of said stock; that appellee was a director of said corporation, and so represented himself at the time the trade was made, and that, reposing confidence in him, she relied entirely upon his representations as to the value of said stock and what he had paid therefor; that these representations were false, and that in February thereafter said Southern Bank & Trust Company failed, and was placed in the hands of a receiver, and that the stock thereof was at the time that the representations were made and this suit instituted absolutely worthless. It was also alleged that the appellant was insolvent. The complaint sought a recovery of $1,500 and an enforcement of a vendor's lien therefor on said land.

To this complaint the appellee filed a demurrer and also an answer, and subsequently testimony was taken by the parties while the suit was still pending in the chancery court. Thereupon, and before the trial of the cause in that court, the defendant filed a motion to transfer the case to the circuit court, which was done, and at the time appellant duly excepted to this action of the court. Upon the trial of the case in the circuit court a jury returned a verdict in favor of appellant for $500, and judgment was rendered thereon in her favor. From this judgment she has prosecuted this appeal.

It is urged by counsel for appellee that the complaint did not state facts sufficient to constitute a cause of action, because the false representations alleged to have been made by the appellee related solely to the value of the stock, and were therefore but a mere expression of opinion, which would not constitute a fraud which was cognizable at law; and it is further urged that, if they did, the action based thereon could only be one of deceit for damages, of which a court of law alone had jurisdiction.

It is well settled, we think, that one who has been induced to purchase property by the fraudulent representations of the vendor has the right to sue in a court of equity to have such sale rescinded, or in a court of law to recover the damages which he has sustained by reason of such deceit and fraud. Representations to be fraudulent, however, must be material to the contract, and "must be made by one who either knows them to be false, or else, not knowing, asserts them to be true, and made with the intent to have the other party act upon them to his injury, and such must be their effect." *La. Molasses Co., Ltd.,* v. *Ft. Smith Wholesale Grocery Co.,* 73 Ark. 542. But every false statement is not necessarily fraudulent in law. It must appear also that the party complaining not only did rely upon the fraudulent statements, but that he had a right to rely upon them as true. The law is that ordinarily the purchaser must beware. Each party to a contract of sale must, with due care and diligence, seek the means of information relative to the subject-matter of the sale which are open to both alike. Otherwise it is deemed in law that the loss to either party was due to his own carelessness and imprudence. However, if the seller has peculiar knowledge of the matter, and makes the false representation in order to induce, and thereby does induce, the buyer to rely upon his false statements, then the seller will not be heard to say that the buyer should have ascertained the truth. Under such circumstances, ordinary prudence does not require the other party to test the truth of the representations which are peculiarly within the knowledge of the party making them, or where they are made to induce the other party to refrain from seeking further information. *Gammill* v. *Johnson,* 47 Ark. 335; *Graham* v. *Thompson,* 55 Ark. 296; *Stewart* v. *Fleming,* 96 Ark. 371; *Evatt* v. *Hudson,* 97 Ark. 265; *Hunt* v. *Davis,* 98 Ark. 44.

Ordinarily, statements relative to the value of property are mere expressions of opinion upon which a purchaser is not entitled to rely. But where the statements relative to the value of property peculiarly within the knowledge of the party making them are made as a fact, and not merely as an opinion, and especially where they are coupled with statements of other facts which affect the value of the property, then, if false and made for the purpose of inducing the purchaser to rely thereon, they become

false representations which will constitute fraud in law. ` This is a well recognized exception to the general rule that the purchaser must beware, and is not authorized to rely upon the statements of the vendor as to the value of the subject-matter of the contract as representations which will avoid the contract if shown to be false. This exception to the general rule, we think, is well stated in the case of *Murray* v. *Tolman*, 162 Ill. 417 : "Where the vendee is wholly ignorant of the value of the property, and the vendor knows this, and also knows that the vendee is relying upon his (the vendor's) representation as to the value, and such representation is not a mere expression of opinion, but is made as a statement of fact, which statement the vendor knows to be untrue, such a statement is a representation by which the vendor is bound." And in conformity with this exception it is well established that false and fraudulent representations relative to the value of the stock of a corporation made under similar circumstances will constitute fraud, entitling the buyer to rescind the contract for the purchase thereof. 3 Clark & Marshall on Private Corporations, § 616 b; 2 Pomeroy, Equity Jurisprudence, § 878; *Leonard* v. *Springer*, 197 Ill. 532; *Picard* v. *McCormick*, 11 Mich. 68; *McAleer* v. *Horsey*, 35 Md. 439; *Nysewander* v. *Lowman*, 124 Ind. 584; *Handy* v. *Waldron*, 18 R. I. 567; *Blacknall* v. *Rowland*, 116 N. C. 389.

In the case at bar, the complaint alleged that the appellee was a director of the corporation, and so represented himself to the appellant, and stated to her as a fact that the stock of this corporation was worth its face value, and also stated as a fact that he had paid that price therefor. Under these allegations, we think that these were statements of fact, and not merely of opinion; and if false, and made with the fraudulent purpose of having appellant to act thereon, which she did to her injury, then they constituted representations which were fraudulent in law; and these allegations were also made in the complaint.

But it is urged that if the false representations set forth in the complaint are of a nature which are fraudulent in law, they would only constitute a claim for unliquidated damages, for the enforcement of which there would be no vendor's lien upon the land, and for this reason a court of equity would not have jurisdiction of the cause of action. It is true that a vendor's lien

only exists for the payment of the purchase money of land which is fixed in amount, and does not exist for a claim for unliquidated damages. "There must be a certain, ascertained, absolute debt owing for the purchase price; the lien does not exist in behalf of an uncertain, contingent or unliquidated demand." 3 Pomeroy, Eq. Jur. 1251; *Harris* v. *Hanie,* 37 Ark. 348; *Salyers* v. *Smith,* 67 Ark. 526.

But a vendor's lien does exist in equity for the payment of the purchase money of the land, and this lien is not displaced by taking either a note therefor or other security unless such is the actual intention of the parties. A vendor of land has a lien for the purchase money and every part thereof which remains unpaid, and such lien continues as to all parties with notice until the entire purchase money is actually paid. *Shall* v. *Biscoe,* 18 Ark. 142; *Lavender* v. *Abbott,* 30 Ark. 172; *Stroud* v. *Allison,* 35 Ark. 100. It has been held by this court that if land is sold for a price or consideration in money, which it is agreed may be paid in the note of a third party or in personal services, the vendor's lien therefor exists, and may be enforced if the note is not delivered or the services rendered. *Young* v. *Harris,* 36 Ark. 162; *Winters* v. *Fain,* 47 Ark. 493; *Nix* v. *Draughon,* 54 Ark. 340; *Tupy* v. *Kocourek,* 66 Ark. 433; *Cox* v. *Smith,* 93 Ark. 371.

A sure criterion for determining whether or not the vendor's equitable lien exists is the question whether any indebtedness for the purchase price any longer exists. The vendor's lien is a specific lien which is co-existent with the debt itself. Until the vendor receives something of value in payment of the purchase money, there can be no actual payment thereof, and the indebtedness therefore would still exist. The giving of counterfeit bills, or forged securities, or absolutely worthless paper, which the purchaser knew at the time to be so, to the vendor, who is ignorant thereof, would not constitute an extinguishment of the debt or the payment of the purchase money. And so, in the case of *Tobey* v. *McAllister,* 9 Wis. 463, it was held that where a party sold land and received a part of the consideration money, and was induced to accept notes and mortgages for the balance, which were worthless, and which the purchaser knew to be so at the time of the sale, this conduct of the purchaser was a fraud upon the vendor, and he still had a lien upon the land for his purchase

money. In that case the court said that the vendor was proceeding to enforce his lien and affirm the contract for the sale of the land. All he was asking was the consideration agreed to be paid for the land. He was willing that the vendee should keep the land if he would only pay the purchase money therefor. The vendee having gotten a conveyance to the land and never having actually paid therefor, the court in that case held that the vendor could enforce his implied lien for the amount of the purchase money which was actually unpaid, although he had accepted for said unpaid amount the notes and mortgages which were worthless; and in effect the court thereby held that such worthless notes and mortgages accepted by him through the fraud of the vendee did not constitute a payment of the balance of the purchase price for which they were accepted.

We think this rule is just and sound. It is not in conflict with the cases of *Harris* v. *Hanie, supra,* and *Salyers* v. *Smith, supra.* In these latter cases there was no element of fraud entering into the contract of sale constituting a ground for a rescission thereof; but they involved solely the violation of contracts to deliver property or to perform certain acts, for the nonperformance of which no definite price had been fixed. The violation in each case, therefore, constituted only an action for the recovery of damages, which were unliquidated. In the case at bar, it is alleged in the complaint that, through the fraudulent representations of the appellant, the appellee was induced to receive in payment of a fixed and ascertained part of the purchase price of the land certain absolutely worthless stock which the appellee at the time knew to be worthless, and of which the appellant was entirely ignorant. In effect, the complaint alleged that the appellee perpetrated a fraud upon appellant in inducing her to take this worthless stock, and that it did not result in the actual payment of that part of the purchase price. Appellant had the right to rescind the agreement to take this stock, if worthless, on account of this alleged fraud of appellee, by which rescission the part of the purchase price for which it was taken would remain entirely unpaid; and, this portion of the purchase price being definitely fixed and ascertained and unpaid, equity would give an implied lien upon the land for its enforcement. If the stock, however, had an actual substantial value, then the appellant would only have a

claim for damages for the alleged deceit perpetrated upon her, for which, being unliquidated, there would be no equitable lien upon the land. In such event the appellant would only be entitled to a personal judgment for any damages to which she might be entitled.

We think, therefore, that the complaint did disclose an equitable element to which the jurisdiction of chancery did attach; and the court of chancery, upon obtaining jurisdiction of the matter in controversy, should have retained the case for the adjudication of all the rights between the parties. Having jurisdiction of a case for one purpose, a court of equity will retain jurisdiction thereof to fully try and determine the case for all purposes and finally decide the rights of the parties therein. *Vaughan* v. *Bowie,* 30 Ark. 278; *Estes* v. *Martin,* 34 Ark. 410; *Conger* v. *Cotton,* 37 Ark. 286; *Bonner* v. *Little,* 38 Ark. 397; *Norman* v. *Pugh,* 75 Ark. 52.

It follows, therefore, that the allegations of the complaint in this cause gave to the chancery court jurisdiction over the subject-matter of the controversy, and the chancery court erred in transferring same to the circuit court and in refusing to retain jurisdiction thereof. The judgment is accordingly reversed, and this cause is remanded with directions to remand same to the Sebastian Chancery Court, and for further proceedings in that court not inconsistent with this opinion.

KIRBY, J., dissents.