## MITCHELL *v.* COLEMAN.

### Opinion delivered February 12, 1917.

1. FRAUD AND DECEIT—SALE OF LAND.—The evidence held to show that a certain sale of land was procured by the false representations of the seller's agent, and that the purchaser relied upon such false representations.

2. FRAUD—FALSE REPRESENTATIONS—FAILURE TO SET UP—AFFIRMATIVE RELIEF.—Appellant was induced by the false representations of appellee's agent to purchase land, and having discovered the fraud, permitted the foreclosure of a vendor's lien thereon, and a sale thereof for an inadequate price, without setting up the fraud; *held*, thereafter, because of laches, appellant would not be permitted to base an action for affirmative relief upon the said fraud.

Appeal from Benton Chancery Court; *T. H. Humphreys*, Chancellor; affirmed.

*Jeff R. Rice* and *Carmichael, Brooks, Powers & Rector*, for appellants.

1.   Damages occasioned by the fraudulent representations which were the inducement for the execution of the contract were properly the subject of a counterclaim, and judgment should have been rendered on the counterclaim to the extent of the damages proven.   The result of the transaction is that appellants *lost both places*, without fault on their part.   The damages were properly pleaded.   Kirby's Digest, § § 6099, 6101; 4 Ark. 527; 1 *Id.* 31; 54 *Id.* 187; 95 *Id.* 488; 98 *Id.* 125.

2.   Appellants were clearly entitled to judgment unless estopped which they are not.   The measure of damages was the difference between the real value of the land and the price agreed to be paid therefor.   The acceptance of the land after knowledge of the falsity of the fraudulent representations is not a waiver nor an estoppel.   47 Ark. 148; 95 *Id.* 488; 81 *Id.* 549.

3.   There was no estoppel.   103 Ark. 326; 1 Am. & Eng. Dec. in Eq. (1 Series), 47; 4 *Id.* 265.   Estoppel can not be asserted to create a right.   64 Ark. 221 is squarely in point on appellant's right to a counterclaim.   It nowhere appears that appellee has been required to pay any part of the $3,000.   The land sold for an excess over the vendor's lien.   So appellee was not injured by the failure of appellants to defend.   The chancellor should have allowed the damages set up in the counterclaim, less the amount sued for by appellee.

*McGill & Lindsey*, for appellee.

1.   The findings for appellants on the issue of fraud and damages in excess of the notes sued on, are clearly against the preponderance of the evidence.   The burden was on appellants to show deceit based on fraudulent representations; that they were false and fraudulent with intent to deceive to appellant's injury; that they induced the contract and worked an injury; that appellants contracted on faith thereof and relied and had a right to rely on them.   38 Ark. 334; 47 *Id.* 148; 71 *Id.* 91; 104 *Id.* 388; 113 *Id.* 78.

2.   All the statements were made by Porter who was not the agent of appellee. Appellant did not rely on them, nor did he have the right to so rely. Mitchell examined the place for himself. 38 Ark. 334; 71 *Id.* 91; 97 *Id.* 265; 99 *Id.* 438; 112 *Id.* 489.

3.   No reduction should be made from the amount of the purchase money notes. 26 Ark. 28.

4.   The cause should be reversed on the cross-appeal. The measure of damages is the difference between the real value of the property and the purchase price. 123 Ark. 275.   The preponderance of the evidence is that the real value of the farm is in excess of $3,000 over the value of the Little Rock property on which there was a claim of $1,250.

## STATEMENT BY THE COURT.

This suit was instituted by the appellee against appellants. Appellee alleged in his complaint that on the 26th day of February, 1912, he sold to Mrs. Maud O. Mitchell a tract of real estate situated in Benton County, Arkansas, and that as part of the purchase price appellants agreed to pay $3,000 and interest, which sum was a first lien on the land, held by one Velma Barry, and also executed to appellee their five joint promissory notes for $110 each, bearing interest at the rate of 8 per cent. per annum from date until paid; that a vendor's lien was retained on the real estate mentioned to secure the payment of these notes; that the appellants failed to pay the $3,000 vendor's lien according to the terms of the contract of Velma Barry, and that she foreclosed her lien; that by the failure of the appellants to perform their contract, the real estate was sold without any fault or carelessness on the part of the appellee, and appellee asked for judgment in the sum of $550 and interest.

Appellants, in their answer, admitted that appellee sold the land to Mrs. Mitchell, and that they executed the notes in suit, and that Barry had foreclosed the lien. They alleged that the lien of $3,000 was reserved in the

deed to Mrs. Maud O. Mitchell, and denied that they owed the appellee any sum whatever. The appellants set up that E. J. Mitchell had been engaged in carpentering the greater part of his life, had no experience whatever in farming, fruit growing or the values of farms and fruit lands, all of which appellee well knew at the time; that appellee and one Porter, his agent, represented to appellant E. J. Mitchell, the husband of Maud O. Mitchell, that he (appellee) had a farm near Gentry, in Benton County, Arkansas, for sale or trade; that appellee falsely represented that the real estate was of the value of $6,500; that there were 44 acres of first-class bearing apple orchard, 4 acres of first-class bearing peach orchard, and 6 acres of bearing pears, all in good condition; that these representations were material; that they were false, and that appellee well knew them to be false, and that appellants not knowing the value of the land, relied on the representations; that the land was not worth exceeding the sum of $3,500; that by reason of the false representations appellants were induced to enter into the contract of purchase and to execute the notes, and deeded to the appellee as a part of the consideration for the purchase thereof their home in Little Rock, which was of the value of $3,000; they prayed that they have judgment for the sum of $3,000, and that appellee take nothing by his suit on the notes.

The appellee replied to the answer and counterclaim, denying the allegations thereof, and alleged that appellee had his farm advertised for sale, and that E. J. Mitchell saw such advertisement and wrote to appellee in regard to it, and that they afterwards made the trade; that appellants traded upon their own judgment with knowledge of appellee's place after seeing it; that appellee had not seen the farm himself which he traded to appellants for about two years prior to that time, and informed appellants of that fact. Appellee alleged that the place was worth as much as $6,500. He further alleged that E. J. Mitchell represented that the place he traded to appellee in Little Rock was worth $4,000,

and was put in the trade at that sum; that there was $1,250 against the property and in the trade appellee paid in cash $1,250, and also $400 in cash to J. H. Barry as agent for his wife, who, in fact, owned the property at the time; that appellee had the land deeded to him, and he deeded the same to Maud O. Mitchell, and appellants assumed notes for $3,000 which appellee had executed to Barry and also executed the notes for $550 to appellee; that appellee had paid out in cash on the property traded to him by appellants the sum of $1,650, and that this property in Little Rock, instead of being worth $4,000, was worth not exceeding $2,000.

Appellee testified substantially as follows: That the five notes in suit were executed by the appellants to the appellee as a part of the consideration for the trade between appellee and appellants; that appellee did not solicit E. J. Mitchell to buy the farm, but that Mitchell saw appellee's advertisement in the Gazette of the farm for sale; that appellee had not seen the farm since 1910, and the trade was made with appellants in January and February, 1912; that when appellee last saw the place, it was in good condition; that when he first saw it, it was owned by one West; that witness, acting for West, who lived in Independence, Kansas, had traded it to a man in Argenta, and the consideration in the trade was $6,500; that the purchaser, T. B. White, had the deed made to Velma Barry, his daughter; that Mitchell went with one Porter to look at the land. Appellee advised Mitchell to go look at it; that Porter was not appellee's partner, but was a real estate agent in the same office with appellee; that he had never seen the country and wanted to see it, and Mitchell knew that Porter had not seen the country. Appellee did not authorize Porter to make any representations about the farm, and if he made any he had no authority to do so. Appellee did not know what occurred between Porter and Mitchell. Mitchell told appellee that he had examined the farm and was satisfied with it. He made no objection to the condition of the orchard, nor the number of acres. Appellee was acting as the agent of

Mrs. Velma Barry in selling the farm. She did not want the Mitchell property at all, and his commission for making the trade was in the $550 notes. Mitchell took possession of the property after the trade and lived on it with his family until Barry foreclosed and never made any complaint about the condition of the place or about any false representations having been made in the trade. Appellee did not know at the time he made the trade whether Mitchell had ever had any experience in farming or not.

Appellee testified that he tried to sell the property acquired from the appellants at $2,000, but was unable to do so. He took the property at Mitchell's figures, $4,000, to get what he could out of it. Barry did not want the Mitchell property with the mortgage on it, and would not take it and told appellee to take it and get what he could out of it as his compensation. He finally got rid of it by trading it with some other stuff without any profit to himself.

There was other testimony on behalf of the appellee tending to show that about the average market value of the place that appellee traded to appellants was $60 per acre. There was also testimony on behalf of the appellee tending to show that the Mitchell property traded by the appellants to the appellee was worth all the way from $1,800 to $2,500.

E. J. Mitchell, on behalf of the appellants, testified that he had never been a farmer before he made the deal about the Barry place; had no experience about farm values, orchards, etc. He saw an advertisement in the Gazette, signed by L. P. Coleman, of an 84-acre fruit farm in Benton county for sale, 54 acres in apple, pear and peach orchard, just in its prime; good house, barn and improvements. He traded the property in Little Rock to appellee for this farm. Appellee was engaged in the real estate business, and Porter was his partner and was assisting him as his agent. Porter made nearly the whole deal himself. Porter represented the place in Benton county as 84 acres, 54 acres in first-class bearing fruit trees, 44 in pears, 80 trees to the

acre; this would make several thousand trees. He told witness that the place was worth $100 an acre. Witness was not shown the place; they went out and sat in the lane. He represented that the trees were between eight and nine years of age. Witness did not know anything to the contrary, and he doubted whether an experienced man in that kind of weather could have told the difference. He relied upon the representations of Porter. Witness learned a short time after the trade was made that the place was not worth half what he paid for it. It sold for $3,000. There was only about 80 acres in the whole place, and 30 or 33 acres in orchard; about 20 acres in apple orchard, practically all dead, and none of them bearing. There were not 8 acres in peach trees on the farm. They had cut them down the year before witness got there. No fire got in the orchard and burned the same after witness got there. The property in Little Rock that witness traded to appellee was worth about $4,200. There was $1,000 or $1,200 against it. Witness valued their property at $4,000, and gave appellee $3,550 difference. Appellee got property worth $4,200, and the notes and the $3,000 vendor's lien assumed by the appellants for nothing. Witness wrote to Coleman (appellee) and thought he had told about Porter's misrepresentations. Witness did not know much about law or the papers. He did not know that he was getting the place from Barry. After the suit was instituted by Barry against Mitchell in the chancery court to foreclose the vendor's lien, Mitchell wrote Barry proposing to compromise and settle that suit, and stating the terms, but in this letter he made no complaint to Barry of the trade by which he had acquired his interest in the property. On the contrary, he stated to Barry that he had paid about $4,000 on the place, and did not propose to be thrown out the first year, and offered to make certain arrangements for extending the loan for six years, with the payment of interest, and agreeing in addition to make certain improvements on the property. Mrs. Mitchell testified that Coleman's partner, Mr. Porter, represented

in her house in Little Rock that there were 84 acres in the place, fifty-four acres in fruit, 6 in pears, 4 in peaches, and the rest in apples, all in first-class bearing condition.

The suit by Barry against Mitchell was instituted May 23, 1913, and judgment was rendered against Mitchell July 12, 1913, for $3,247.50. The land was ordered sold to satisfy the decree, and the sale was made on the 22d day of August, 1913. The land was purchased by Velma H. Barry for $3,301. Deed was made by the commissioner reciting these facts, and the deed was approved August 25, 1913. The present suit was instituted August 21, 1913, and the answer and counterclaim was filed August 28, 1913.

Upon substantially the above facts, the court found as follows: "That plaintiff (appellee) and Velma Barry jointly sold the real estate described in the complaint to the defendant (appellant), Maud O. Mitchell, at and for a trading consideration of $6,550; that the notes sued on were a part of this consideration; that the plaintiff (appellee) falsely represented to the defendants (appellants) that there were 53 acres of fruit trees on the farm conveyed to them, which were in their prime, but as a matter of fact, they were diseased and dying; that defendants had the right to rely upon said representations, and did rely upon them as true; that they were material and were the inducement to the defendants to make said purchase, and that thereby the defendant, Maud O. Mitchell, has sustained damages in excess of said indebtedness sued on, but she is estopped from recovering said excess because she permitted Barry to foreclose on the $3,000 note and vendor's lien which were part of the purchase money, without making any defense, or resisting said foreclosure, but voluntarily let said farm be sold in said foreclosure suit and proceeds applied as a payment and by offering to Barry to pay same after foreclosure proceedings were instituted."

The court thereupon entered a decree cancelling the notes sued on and dismissing appellee's complaint

for want of equity, and entered a further decree sustaining the appellant's cross-complaint to the extent of the indebtedness sued on, and dismissing same as to any further damages. Both parties appeal.

WOOD, J. (after stating the facts). The findings of the chancellor on the issue of fact as to fraudulent representations are not clearly against the preponderance of the evidence. There is a decided conflict in the evidence as to whether or not Porter, who showed appellant E. J. Mitchell the place in Benton county, and who made representations concerning it as testified to by appellant E. J. Mitchell, was the agent of the appellee for that purpose. The appellee testifies positively that he was not his agent. But the testimony of Mitchell and his wife and the circumstances as revealed by the testimony of the appellee as well as the testimony of appellants, show clearly that Porter was appellee's agent and representing the appellee while showing appellant Mitchell the farm in Benton county, and the representations he made concerning the land were therefore binding upon the appellee.

It was shown that Porter visited the home of Mitchell in Little Rock and talked to Mitchell's wife about the place in Benton county. He had a photograph of the house and front yard which he exhibited to appellant E. J. Mitchell during this trip. Mitchell said Porter "made nearly the whole deal himself." It was cold, bad weather, snow on the ground, and they would sink up to their knees in the mud. They stopped in the lane and did not go further to look over the place. Porter kept hold of Mitchell's arm most of the time, never let him get three feet away, and Mitchell never talked to the tenant that was on the place in regard to it.

The strenuous efforts put forth by Porter to sell or trade to appellants the farm in Benton county, as disclosed by the testimony of the Mitchells, are wholly incompatible with the conduct of a mere stranger or volunteer in the transaction. We conclude therefore,

notwithstanding the testimony of the appellee, that a decided preponderance of the evidence shows that Porter was the agent of the appellee in the transaction. Under familiar rules of law, the principal is bound by the acts and declarations of his agent while acting within the scope of his authority.

Now, Mitchell, who acted as the agent of his wife in making the trade, was born and reared in the city, had never been on a farm, unless for a day, and had no knowledge or experience of farming or farm values, or of orchards and raising fruit. The conduct of Porter shows that he claimed to be perfectly familiar with the farm in Benton county and the property in that vicinity.

The preponderance of the evidence warrants the conclusion that Mitchell was an unsophisticated city carpenter, and that Porter was a shrewd real estate agent. Mitchell states that in his dealings he had never been imposed upon, that his transactions had been with honest men, and that he believed every word that Porter told him was the truth and relied upon it. It is fair to conclude that Porter knew that Mitchell was ignorant of farms and farm values. It could serve no useful purpose to discuss in detail the evidence and state *in extenso* the reason for our conclusions. It suffices to state that we are convinced from the evidence that Porter either knowingly made false representations to Mitchell concerning the farm in Benton county, or if he did not know that these representations were false, asserted them as if they were true; that he did this for the purpose of having Mitchell to act upon them and to enable him to consummate the deal they were negotiating; that these representations were an inducement to the trade; that the deal financially was disastrous to appellants; that the relations of Porter and Mitchell at the time the representations were made were such that Mitchell relied upon the representations made by Porter, and that he had a right to believe them to be true and to rely upon them.

The law applicable to such cases, under varying facts and conditions, has been announced and frequently reiterated by this court. *Hanger et al.* v. *Evins & Shinn,* 38 Ark. 334; *Matlock* v. *Reppy,* 47 Ark. 148; *Neely* v. *Rembert,* 71 Ark. 91; *Evatt* v. *Hudson,* 97 Ark. 265; *Jarratt* v. *Langston,* 99 Ark. 438; *Bank of Monette* v. *Hall,* 104 Ark. 388; *Grant* v. *Ledwidge,* 109 Ark. 297; *English* v. *North,* 112 Ark. 489; *American Realty Co.* v. *Hisey,* 113 Ark. 78.

The conclusion of the chancellor was therefore correct in cancelling the notes in suit and in dismissing appellee's complaint for want of equity.

II.   Mitchell testified that at the time the trade was made he thought Coleman was the agent of Barry; thought he was doing business with Barry all the time. Witness made the notes payable $550 to Coleman, and the others to Barry for $3,000. Coleman made the deed and reserved a vendor's lien in favor of Mrs. Barry for $3,000 and $550 for himself.

Now, the record shows that deeds to the farm in Benton county were made from Barry and wife to Coleman and from Coleman and wife to Maud O. Mitchell. Both of these deeds were dated and acknowledged February 26, 1912. The Barry deed recites a consideration of $3,500, of which $500 was paid in cash, and five notes for $600 each executed by Coleman and wife to Barry for the balance. The Coleman deed to Mrs. Mitchell recites a consideration of $6,300, of which $2,750 was paid in cash, and the assumption of the payment of the five Barry notes and the execution of the five notes to the appellee on which the present suit is based.

Upon these facts the chancellor found that Coleman and Barry jointly held and conveyed the farm to Mrs. Mitchell. Coleman was Barry's agent to sell the farm. Barry did not desire the Little Rock property in exchange in the trade, but Coleman was willing to take it, and the transaction assumed the form shown by the deeds and the evidence to conserve the convenience and wishes of appellee Coleman and Barry. It

was one transaction, and Mitchell understood it as such to enable Mrs. Barry, through Porter and Coleman, to sell her farm.    While it would have been technically more accurate for the court to have designated it as a sale, perhaps, from Barry to Mitchell, yet it is true that Barry and Coleman were inseparably connected in the transaction which was consummated by the trade, and it is in this sense doubtless that the court made its finding that Coleman and Barry jointly held and conveyed the property.   Barry was bound by the representations of Coleman and Porter within the scope of their real or apparent agency in selling her farm.

It was therefore the duty of the Mitchells when Mrs. Barry instituted her suit to foreclose the vendor's lien notes against Mrs. Mitchell, which the Mitchells assumed to pay as a part consideration for their trade, to set up in defense the alleged false representations that were made as an inducement to her and her husband to trade for the farm.   Appellants were in possession of the land something over a year after the trade was made before foreclosure suit was instituted, and after this suit was instituted they continued in possession and set up no defense of fraudulent representations against the vendor Barry's notes.   If appellants had set up the fraudulent representations, they might have had the trade rescinded and the equity in the Little Rock property restored to them, and the chancery court might then have adjusted all equities and made such disposition of the cause as would have left all parties *in statu quo*.   Appellants failed to do this, but on the contrary, while the suit was pending and after they had been in possession of the property for more than a year, by letter to J. K. Barry, concerning the suit Mitchell made no complaint of any fraud.

Appellants, without setting up any fraud on the part of Barry or her agents, permitted the suit to progress to judgment and the land to be sold for the sum of $3,247.50, when the undisputed evidence shows that it was worth considerably more than that.

Under these circumstances the court's decree was correct in dismissing appellant's cross-complaint in so far as it asked for affirmative relief in damages. Appellants, under the facts, were entitled to set up the fraudulent representations of the appellee in connection with the transaction as a defense to the notes sued on, but on account of their laches in not seeking earlier to rescind the trade for fraud and to recover damages growing out of such fraud, and by reason of their failure to set up any fraud in the foreclosure proceedings against them, they waived their rights and are not entitled to use such fraudulent representations to obtain affirmative relief by way of damages in this suit. In other words, under the facts of this record, while equity will allow appellants to use the plea of fraudulent representations as a shield, it can not permit them to use it as a sword.

The decree of the chancellor is in all things correct, and it is affirmed.

HUMPHREYS, J., not participating.