JONES v. DOSS et al.

VENDOR'S LIENS—*When notes given for purchase money assigned, etc.*—The vendor's lien is *personal,* and the assignment of the notes, given for the purchase money, does not carry with it the lien without words to that effect in the deed.

APPEAL FROM JEFFERSON CIRCUIT COURT.

HON. HENRY B. MORSE, *Circuit Judge.*

*A. H. Garland,* for Appellant.

*First.* As a general proposition, if a debt is secured by an express lien upon property, by agreement of parties, an assignment of the debt, secured by such lien, will give the assignee the benefit of such lien: 2 *Wash. Real. Prop.* 92; 4 *S. & N.* 294; 5 *Hump.,* 489; 2 *Yerg.,* 84; 4 *Iowa,* 430; 2 *Dana,* 98; 6 *B. Mon.,* 67; 1 *Blackf.,* 417; 7 *Ib.,* 329; 5 *Ind.,* 492; 13 *Ark.,* 533; 15 *Ves.,* 339; 10 *Ala.,* 441; 7 *Blackf.,* 227. By our law, the lien is held to pass in certain cases with the note: 18 *Ark.,* 142; 23 *Id.,* 225.

McCLURE, C. J.—On the 20th of January, 1860, Bocage sold six hundred and forty acres of land to one Leroy Doss for the sum of seven thousand dollars, one-third of the purchase money in hand, and the balance in two equal payments, due January 1st, 1862-3, respectively.

On the 14th of January, 1862, Bocage and wife made a deed to Doss, acknowledging the receipt of the first payment. The deed alluded to, in addition to the above, recites the fact that Doss has executed his two notes, bearing date January, 20, 1860, to Bocage, for $2333 33 each, due as before stated; said deed also contains this further clause, to wit: "*it being distinctly understood that a lien is reserved on the above granted premises to secure the payment of the purchase money in full.*"

The note due January 1st, 1862, was, on the 15th day of December, of that year, assigned by Bocage to N. K. Jones,

the complainant and appellant in this case. Doss died and, on the 19th of January, 1867, one Bagg was duly appointed administrator on said estate. On the 9th of April following, Jones presented his note, duly authenticated, to the administrator for allowance, and the same was rejected, but was afterward allowed by the Probate Court, and classed as a fourth-class claim. After the claim was allowed and classified, Bagg, the administrator on the estate of Doss, was ordered to sell the lands of which Doss died seized, to pay debts, which was accordingly done, and one W. P. Grace became the purchaser.

The note which fell due on the 1st of January, 1863, was, by Doss, in his lifetime, taken up by giving to Bocage a note on Davis & Templeman, which was for a like amount, and due at the same time the note was which Doss took up. Bocage transferred the Davis & Templeman note to one Carroll, and Carroll transferred the same to W. P. Grace, who presented the same to the Probate Court, and had the same allowed as a fourth-class claim against the estate of Doss, deceased. What authority the Probate Court had to allow the note of Davis & Templeman as a fourth-class or any other class claim against the estate of Doss, is beyond our knowledge, but, as the judgment is unappealed from, we will pass this subject without further comment.

On the 5th of October, 1869, Jones filed his complaint, in equity, asking that he be subrogated to the rights of a vendor, and that the lands of which Doss died seized, be sold to pay his debts. To this complaint, Francis Doss, Minus Doss, W. P. Grace, and C. M. Bagg, administrator of Leroy Doss, deceased, are made parties defendants. At the hearing, in the court below, judgment was for the defendants, and Jones appealed.

The complaint, in this case, alleges the sale of the land, the reservation of a lien in the body of the deed, the execution of the notes by Doss to Bocage, and the assignment of one of them to the complainant, etc. The view we take of this

matter renders it unnecessary to state any of the matters set up by the defendants, save those presented by a general demurrer to the complaint. Viewed in this light, there is little difference between this case and that of *Sheppard vs. Thomas*, (26 *Ark.*, 617.)

The only distinction between this case and the one referred to, is, in the language assigning or transferring the note. In the case of *Sheppard vs. Thomas*, (26 *Ark.*, 617), the notes were simply assigned "for value received;" in this case, there are two assignments endorsed on the note, one of which reads as follows, and is found on the back of the note : "For value received, I assign the within note to N. K. Jones, December 15, 1862. (Signed) Jos. W. Bocage."

The other endorsement is written across the face of the note, but bears no date, and is as follows : "For value received I hereby assign all my right, title, interest and equity in this note to N. K. Jones. (Signed) J. W. Bocage."

If we should treat the assignment, made December 15, 1862, as the *only* assignment of the note, this case would fall within the rule laid down in the case of *Sheppard vs. Thomas*, (26 *Ark.*, 617), and the doctrine of *stare decisis* would forbid any extended argument of the question presented in this case. But it is insisted that the assignment of the *equity* by Bocage to the complainant, places him on higher and more tenable grounds than one who simply came into the possession of the note in the ordinary course of business. In order to ascertain if this be true, the first question to be determined is, whether Bocage had an equity which was *assignable*. It was said by the minority, in *Sheppard vs. Thomas*, (26 *Ark.*, 617), that, "there are *two* kinds of vendor's liens," and they are described as follows :

*First.* "A lien by express contract, or by agreement between the parties," and *Second;* "An equitable lien arising between the parties, where an absolute conveyance is made and no expression of an intention to reserve a lien is had."

In speaking, or rather in describing the first lien, the mi-

nority say, " where a vendor stipulates for a lien to secure the payment of the purchase price, and gives proper notice to all who may be concerned, such lien then becomes a security for such purchase money, and may be enforced by the vendor, or he may assign it to another, and such holder may enforce it." But *how* is the *"proper notice"* to be given? Can it be done by making the reservation of lien in the face of the deed and placing it of record? We think not. To tolerate such a course, would as effectually encourage secret liens, as to hold that the assignee of a note given for the purchase of lands, took all the equities of the vendor. This deed, says Bocage, shall have a lien upon the lands for the unpaid purchase money—the law gave him such a lien without any such expression in the deed, but, it is argued, because the parties have *expressed a lien*, that the presumption arises that something beyond what the law implied was intended.. Here is where the argument is at fault. The *expression of the lien was not* for the purpose of giving to the notes, for the unpaid purchase money, a greater value than they would otherwise possess. Bocage knew, as does every man who understands the law, that after he executed an absolute deed for the land, that his vendor's lien was only good against the vendee, his heirs and other privies in estate, and purchasers *with notice*. What was really intended by the *expression of the lien*, was to place constructive notice on the record, *to purchasers of the estate*, and not to create an equity which would follow the notes into the hands of an assignee. The law, from the time the memory of man runneth not to the contrary, has been that the vendor's lien was *personal*, and not *assignable*. With this fact kept well in view, let us examine the language of the deed and see if the words there employed evidence an intention to create a lien which should follow the notes into the hands of an assignee; or whether it evidences an intention to warn purchasers of the estate, that *not the assignee* of the notes has a lien, but that the *vendor* has.

After the words " to have and to hold the above granted

premises to the said party of the second part, his heirs and assigns forever," is found the following : " it being hereby distinctly understood that a lien is reserved on the above granted premises to secure the payment of the purchase money in full." By reference to another portion of the deed, we find that the purchase money was due and payable, not to Bocage or his assigns, but to Bocage himself. It is a well known rule, that a deed will be most strongly construed against a grantor. This being true, and it being conceded that a vendor's lien, where an absolute deed has passed between the parties, was not a valid lien as against *purchasers without notice*, the question arises, what was the object of the parties in placing the words creating a lien in the body of the deed ?

There is nothing in this transaction which indicates an effort on the part of Doss, or Bocage, to do aught else than to notify the public that the purchase money for the lands described in the deed was not all paid. There is nothing in the deed which imports that either Doss or Bocage made mention of a lien for the purpose of imparting a greater value to the note, or for the purpose of rendering a negotiation of the note less difficult. Bocage knew that a vendor had a lien for the purchase money against everybody, *save purchasers without notice*. Under such circumstances, what would a prudent man do? We think he would do just what Bocage did, take the precaution to place of record a fact which would preclude the possibility of any man purchasing the estate without notice of the non-payment of the purchase money.

It is true, the notes were to remain liens until the purchase money was paid, but it must be borne in mind that this language must be restricted in its meaning to the contracting parties, for we are not at liberty to assume, that, at the time of making the contract, either party had reference to assignees, or third parties. If these parties had desired to create a security or lien, which would follow these notes into the hands of third parties, language, showing such an intention,

should have been employed in the deed. We have no power to interpolate terms and conditions, at the instance or request of either party. The general rule is, that a deed shall be construed, in cases of doubt or ambiguity, most strongly against the grantor. The vendor's lien is personal to himself, and cannot be transferred after the title to the property has been alienated. Equity raises the lien in his favor, because it would be wrong for one to have and enjoy the lands of another without payment therefor. When the *vendor* has received satisfaction, the reason for the equity no longer exists. It may be said, there is no hardship in allowing this lien to pass to the assignee, and that it can make no difference to Doss, whether he pays to Bocage or some one else. We are not discussing a question of hardship. Older and wiser heads than ours have said the lien of the vendor was *personal* and not assignable after the vendor had parted with his title, and if the reasons given for the establishment of that rule, fail to carry conviction to the minds of those who yet doubt its correctness, we acknowledge our inability to do so. After the *vendor* has been satisfied, we can see no reason why one creditor should be placed upon higher grounds than another.

Bocage had no equity in the note, which was transferrable to Jones, or any one else, of a character to authorize the bringing of this suit. Finding no error in the proceedings of the court below, the judgment is in all things affirmed.

GREGG, J., dissenting says: I would have added nothing to what I said in the case of *Sheppard vs. Thomas*, upon the main question in this case, but it seems that I did not make myself fully comprehended by the court.

In that case I assumed that absolute owners of real property had a right to sell and convey the same or any part thereof or interest therein, or they could sell, subject to any conditions, restrictions or limitations, (not prohibited by law) and they could reserve just such right or interest, contingent or absolute, as they saw fit, and that, under our registry

laws, when a deed was put upon record, all concerned must know in whom the title vested, and the full extent of, and all limitations upon such title; the record affects such with notice.

I also assumed that the courts, in construing a deed, should endeavor to arrive at the meaning and intention of the contracting parties; that this fundamental rule in the law of contracts, as long since declared by this court, *Davis vs. Tarwater*, 15 *Ark.*, 287, is as applicable to agreements by deed as any other contracts, and when the contracting parties express their intention, the courts are not authorized to attach any other meaning to their agreements than what they themselves do, and that the courts ought to carry out the expressed will of the parties.

And I assumed further, that what is considered odious in secret—hidden, liens—including what is technically equitable liens, does not attach to any lien created or reserved upon the face of a deed or otherwise published, by recording under the registry acts, so all can see the extent of the vendor's claims and the vendee's title. Every purchaser is supposed to investigate title before he invests his money. He would certainly be guilty of culpable laches if he did not ask an exhibit of the seller's titles, and he has only to read the deed, or its record, to see exactly what title is held by his vendor; he sees all that has been conveyed to him, and all the incumbrances, conditions and limitations upon such title, and consequently knows exactly what interest he is getting by the purchase, and cannot be deceived by any parol representations.

The liens disfavored, by courts, are those wherein a vendor makes a clear and unconditional conveyance, evidencing a receipt of the purchase price, and after that attempts to hold a secret lien for purchase money.

If the intention of the parties is to govern, when they assert, by a solemn provision in their deed, that a lien shall be held until the purchase money is paid, I know of no law

or rule giving us the right to say they meant only so long as the vendor held the notes, and did not mean what they said, until the notes were paid off. Had they wanted a lien in Bocage's favor only, they could just as well have said so ; they did not say that, and we must presume they did not so intend, and from the stress this court puts upon the presumption that Bocage knew the law, we can certainly be indulged in assuming that he knew the force of common, plain English words. In the argument, the court say: "This deed says Bocage shall have lien;" this is the error; it says a lien is *reserved for the payment of the purchase money.*

They say the lien was not to give these notes a greater value than they otherwise would have possessed. How was this conclusion reached? We see nothing of the kind in the deed, and no intimation to that effect appearing anywhere between the parties, and by our reflections on the conduct and declarations of the parties, we arrive at exactly the opposite conclusion. We think it was the vendor's interest, and by his words and actions he has sufficiently shown, that it was his intention to make these notes most valuable, and we are not confined alone to the fact that such notes are commercial paper, and are largely put on the market in the business transactions of the country, but when Bocage so soon put them on the market, we may well conclude he intended to use them in that way, and reserving a lien for their payment, signified his intention to secure such payment.

The court say: "Bocage knew, as does every man who understands the law, that after he executed an *absolute deed* for the land, that his vendor's lien was only good as against the vendee, his heirs and other privies in estate, and purchasers with notice." Now if this stipulation in the deed was sufficient to compel purchasers to see that he was paid, why was it not sufficient to require them to see that the notes were paid, if the stipulation required such payment, which, in this case, is not controverted? But they say when Bocage executed an *absolute deed*, he knew, etc. Now we think this is a

misapplication of a significant term. This, as we understand it, was not an absolute deed in the legal or common acceptation of that term; to be absolute is to be free from all condition or limitation. This deed is not such, and to reason from that assumption, the argument is at fault and the conclusion wrong.

The stipulation, in this deed, made it the reverse of absolute, and such condition, incorporated in the deed, carried with it rights that would not follow secret equities upon an absolute deed; hence it seems fallacious to urge such reasons in this case as are applicable when deeds are absolute on their face. The court say: "It is true the notes were to remain liens until the purchase money was paid, but it must be borne in mind, this language must be restricted in its meaning to the contracting parties," etc. Why change the meaning in this? Why restrict it more than any other clause in the deed? If expressed in the deed, it is no secret lien, it becomes notorious by being of record, and we favor letting the whole deed mean what the grantor and grantee intended it should mean.

In another paragraph of the opinion it is said: "They only wanted notice that the purchase money was not paid." If that be so, then the words, creating or declaring this lien, were without any necessary use or meaning, because, before that time, they had set out in the deed the fact that only one third of the purchase money had been paid, and that two-thirds were not paid, and not to be paid until times fixed long in the future; and are we to suppose that the parties, after they had shown that the purchase money was not paid, went on to formally declare that a lien should be held merely to repeat what they had already announced. It seems that this could not have been the intent. As intimated, in the beginning of these remarks, we seem to differ in the groundwork of this question; the majority seem to hold that a vendor cannot pass a legal title, and, in the same contract or deed, hold an equitable one that will enure to the benefit of an

assignee of notes, while I hold that an absolute owner can sell what interest in the title he chooses, and withhold what he chooses, and for just such purpose (not unlawful) as he sees fit, and that the written contract or deed between him and the vendee is to evidence the intention, obligation and rights of the parties, and, in construing a deed, full effect should be given to all its conditions and stipulations as they were understood between the contracting parties. But I will only refer to my argument and the authorities cited in the case of *Sheppard vs. Thomas*, 26 *Ark.*, 617, and not comment at length.