## KELLEY TRUST COMPANY v. ZENOR.

### Opinion delivered June 18, 1923.

1. DEEDS—CONSIDERATION—SUBSEQUENT ACTS.—A valuable consideration for a deed may be other than the actual payment of money, and may consist of acts to be done after the conveyance.

2. VENDOR AND PURCHASER—VENDOR'S LIEN—NONPERFORMANCE OF CONDITION.—While a vendor's lien will not arise to secure the performance of certain acts, the nonperformance of which would make a claim for unliquidated damages, yet where a deed recites the future performance of certain acts as part consideration, and that for nonperformance thereof a sum certain shall be paid, a vendor's lien therefor may be enforced upon failure of performance of such acts.

3. CONTRACTS—BREACH—DEFENSE.—One who undertook to maintain a glass factory continuously, employing a certain number of men, cannot excuse his nonperformance by reason of his difficulty in securing a working scale of wages from the labor union.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed.

*Geo. F. Youmans* and *Pryor & Miles,* for appellant.

Appellees procured a donation of a site worth $7,000 for a glass factory, the Business Men's Club paying $3,000 and appellant giving remainder of value of site conveyed, all conditioned on the erection and operation of a factory of designated capacity thereon by appellees, and a vendor's lien was retained for the price of the site to compel a performance of the condition. The change in the deed, after its execution, by the secretary of the Business Men's Club, would not affect its provisions. 113 Ark. 289. Not entitled to relief on account of act of God or inevitable accident. 6 R. C. L. sec. 367. Appellees failed to perform the condition of the contract, and appellant was entitled to foreclose lien for purchase money. Provision retaining lien not one for penalty or forfeiture. 93 Ark. 371. Was one for liquidated damages, 122 Ark. 235. The consideration expressed for the location and operation of the factory was a valuable consideration. 162 U. S. 40, L. ed. 960. Appellees got a conveyance of the lands, and failed to pay therefor in money or by location and operation of the factory. 99 Ark. 438. There was no sufficient reason for appellees' failure to perform contract that would relieve them from paying for the land. 93 Ark. 447. Doctrine of 93 Ark. 371 supported also by 14 Ala. 169, 48 Am. Dec. 93. A provision for payment of land in cotton does not impair vendor's lien. 6 Am. Rep. 707. Written agreement fixes the amount of the lien herein which would be liquidated damages if factory not operated.

*Joseph R. Brown* and *James B. McDonough,* for appellees.

93 Ark. 371, cited by appellants, has no bearing on question involved here. 162 U. S. 40 is hardly in point, and 122 Ark. 235 is not applicable to the facts of the case. Appellees complied substantially with the terms of

the Kelley Trust Company deed, although they were not bound thereby. They knew nothing about its terms till it was rescinded, and from then during the one year it had to run the plant was operated five months. The war excused the operation of factory and performance during 1917. 25 Ark. 138; 148 Ark. 132; 190 N. Y. 539, 83 N. E. 1122. The plant operated 52 weeks by June 1, 1922. The chancellor found the contract had been substantially complied with. 65 W. Va. 531; 64 S. E. 836; 84 Mo. 263; 13 Mo. 191. Substantial compliance is sufficient. 5 Ark. 596; 97 Ark. 278; 131 Ark. 481. Each case must depend on its own facts in determining whether a stipulated sum is a penalty or forfeiture, as the chancellor held here, or liquidated damages. 112 Ark. 126. The secretary of the Business Men's Club was justified in making the change correcting the deed to conform to the terms of the contract made. "Equity regards that as done which ought to be done." 21 C. J. 202; 121 Ark. 550; 91 Ark. 468; 2 C. J. 202. Under doctrine of equitable estoppel, two people may find themselves charged with all the consequences of agency as to third persons. 2 C. J. 461; 96 Ark. 350. Appellee relied on Gill's, said secretary's, representations. 2 C. J. 465. This reliance entitled Zenor to a conveyance in accordance with the contract made with the Business Men's Club, and he was entitled to proceed as he did, considering that as done which ought to be done. The court held the stipulation in the deed a provision for a penalty, and its finding is not against the clear preponderance of the testimony. 44 Ark. 216; 27 Ark. 200; 95 Ark. 523; 106 Ark. 123; 149 Ark. 670. Appellant, by the construction and operation of a glass plant by appellees, secured all the benefits, and is not entitled to relief. It is undisputed that appellees invested $150,000 in the plant, and because it only employed 125 instead of 150 men it would be nothing but a forfeiture to allow appellant to recover back the property. Forfeitures are not

favored in equity. 142 Ark. 539. Equity should not enforce such a penalty. 132 Ark. 473; 59 Ark. 66; 235 Pa. 443, 84 Atl. 427; 64 S. E. (W. Va.) 836. If appellant has any remedy it is an action at law for damages. 83 N. E. (Ill.) 1072; S. W. (Ky.) 631. Conditions are not favored in contracts of this kind. 200 N. Y. 224, 93 S. E. 516. Conditions subsequent are not favored. 77 Ark. 168; 113 Ark. 92.

*Geo F. Youmans* and *Pryor & Miles*, in reply.

Appellees, of course, were bound by the terms of the deed. Inability to procure labor no excuse for failure to perform contract. 93 Ark. 447. No substantial performance of contract by appellees. 43 Minn. 357, 45 N. W. 845, 9 L. R. A. 52; 124 Wis. 84, 102 N. W. 356; 4 Words & Phrases, 751. Contract does not constitute a condition subsequent nor involve a forfeiture. 70 N. Y. 303; 177 Pac. 138, 13 Wyo. 37; 109 Va. 676, 64 S. E. 982; 2 Words & Phrases, 1402; 1 Words & Phrases (2d S.) 865. No forfeiture. 10 Pa. Co. Ct. 8. 565; 105 S. W. (Tex.) 366; 3 Words & Phrases, 2893; 2 Words & Phrases (2d S.) 611.

WOOD, J. The Kelley Trust Company (hereafter, for convenience, called appellant) is an Arkansas corporation, with its principal place of business in Fort Smith, Arkansas. Harry E. Kelley is its president, and owns a majority of its stock. On the first of May, 1917, the appellant executed to one C. P. Zenor, Sr., his heirs and assigns, a warranty deed to block 38, Midland Heights Addition to the city of Fort Smith, Arkansas. The consideration named in the deed was $7,000. The deed contained the usual clauses and covenants, and in addition the following:

"Three thousand dollars of the above mentioned consideration is paid in cash by the Business Men's Club of Fort Smith, Arkansas, and the receipt thereof is hereby acknowledged. The remaining four thousand dollars is to be paid by the said C. P. Zenor, Sr., by the erection, maintenance and operation, on said real es-

tate, until January 1, 1921, of a glass factory, having a daily pay-roll of not less than six hundred dollars, and employing not less than one hundred fifty men; the meaning and intent hereof being that said real estate is donated to said C. P. Zenor, Sr., his heirs and assigns, upon condition that said C. P. Zenor, Sr., his heirs and assigns, erect, maintain and operate on said real estate, during the period above indicated, a glass factory having a daily pay-roll of not less than six hundred dollars, and employing not less than one hundred and fifty men, a lien being hereby retained on said real estate to secure performance of said conditions. "And in the event said C. P. Zenor, Sr., his heirs and assigns, should fail to erect and put in operation on said real estate, within eight months from this date, a glass factory having a daily pay-roll of not less than six hundred dollars and employing not less than one hundred fifty men, or in the event that C. P. Zenor, Sr., his heirs and assigns, after erecting and putting such glass factory in operation, should be or become at any time during the period aforesaid unable to continue operating the same, or should suspend operation thereof for four months at any time during said period, or should, for four months at any time during said period. fail to operate such factory on a scale requiring a daily pay-roll of not less than six hundred dollars and the employment of not less than one hundred fifty men, then in any such event said C. P. Zenor, Sr., his heirs and assigns, shall become and be considered indebted to the said Kelley Trust Company, its successors and assigns, in said sum of seven thousand dollars, 4/7 for said company and 3/7 for said Business Men's Club, and the lien herein reserved on said real estate may be foreclosed for such indebtedness. And in the event said Kelley Trust Company should become the purchaser of said real estate in said foreclosure proceedings, it shall hold the title thereto in trust, 4/7 for said company and 3/7 for said Business Men's Club."

This action was instituted by the appellant to foreclose its vendor's lien. It set up in its complaint the deed, and alleged, in substance, that Zenor had failed to comply with the conditions above set forth, and that, by reason of such default, he was indebted to the appellant in the sum of $7,000, 4/7 for the appellant and 3/7 for the Business Men's Club. It prayed for judgment for $7,000, and that a lien be declared upon the lots described in the complaint, and that the same be subjected to the satisfaction of the judgment. .

The Model Window Glass Company appeared and made itself a party defendant to the action, and it and Zenor and his wife answered, alleging, in substance, that the obligations of the contract under which the deed was executed to Zenor had been fully complied with. The trial court, after hearing the testimony in the cause, found the issues in favor of the defendants, and entered a decree dismissing the complaint for want of equity, from which is this appeal.

The facts are substantially as follows: Zenor, who had been interested in the operation of a glass factory outside of the State, came to Fort Smith to locate a glass factory. One R. S. Robinson and his associates had developed what is known as the Kibler Gas Field in Crawford County, near Fort Smith. Harry Kelley and the appellant were large landowners in the city of Fort Smith, and had about three hundred acres of land in what is known as Midland Heights Addition to the city of Fort Smith, in which was situated block 38, containing 35 city lots 50x140 feet, located on both the lines of the Frisco and the Missouri Pacific railways, on the highest point of ground between the cities of Fort Smith and Van Buren, and only a short distance from the interurban line connecting the two cities. The Business Men's Club, as its name implies, was a civic organization in the city of Fort Smith for the promotion of the prosperity of the city. Its president was B. D. Crane and its secretary was Ray Gill. When Zenor came to Fort Smith, the club offered him a free site for his glass

factory, and sites were shown him by Robinson, but he was not pleased with these. Whereupon Robinson showed him other sites, and among them block 38, which he se'ected. This block was on the market for $7,000. The club had the sum of $3,000 which it desired to donate towards securing a free factory site for Zenor's glass plant. Kelley owned about 200 acres of land adjoining block 38, which he proposed to sell for homes to employees who worked permanently in some factory located on block 38. Robinson asked Kelley if he would not donate $4,000, the balance of the market price of block 38. Kelley had already contributed five per cent. of $20,000 which had been raised by the club for the purpose of locating factories in the city, and had pledged himself to pay five per cent. of $20,000 more. This donation and pledge had been made just before Robinson approached him, and therefore he declined to contribute the $4,000 more to the club. However, he informed Robinson of the terms on which he would sell block 38, which terms are as already set forth in the deed. Before this deed was executed on the 31st day of March, 1917, Zenor and the club had entered into the following contract, to-wit: "C. P. Zenor, Sr., and associates agree, whether as individuals or as stockholders, or through the medium of a corporation to be organized, to erect a plant at Fort Smith, Arkansas, on the property hereinafter described, for the purpose of making window glass and kindred products, said plant to cost not less than $75,000, and to be in operation and employ at least 125 laborers, by the 15th day of December, 1917. The Business Men's Club of Fort Smith, Arkansas, agrees that when said C. P. Zenor and associates have complied with the terms of the agreement on their part to be performed, it will convey, by proper warranty deed, to such person or persons as the said C. P. Zenor may designate, block 38, Midland Heights Addition to the city of Fort Smith, Arkansas, provided that said deed

shall recite that, if the said C. P. Zenor and associates, or a corporation to be organized, does not continue to operate said plant for a period of three years, employing, during operating periods, an average of 125 laborers, the title to the property above mentioned shall revert to the grantor who conveys said property by means of the aforesaid deed."

This agreement was signed by Zenor, and by Crane as president of the club. Zenor organized the Model Window Glass Company, a corporation, of which he was general manager. Robinson, who was a director of the Business Men's Club and present at its meeting, and who was largely instrumental in bringing about the negotiations between the club and Zenor, and between the club and Kelley, told Kelley that Zenor had said that he would build a plant a great deal bigger than they had agreed upon, and that he was going to double the men and double the pay-roll; that he was going to operate the plant practically the whole year. Kelley told Robinson that he was mistaken about the benefits that the glass company would be to the town, and was reluctant to sell the property, but finally said, "I will sell the property to the Business Men's Club for $3,000 provided certain conditions are put in that deed as to how this plant is to be operated."

The appellant executed the deed, as already mentioned, on the first of May, 1917, and delivered the same to the secretary of the Business Men's Club. In the meantime, after the execution of the agreement between the club and Zenor, the construction of the glass plant had been carried on and the factory began operation before the 15th of December, 1917. It was some time after the deed was delivered to the secretary of the club before he succeeded in delivering the deed to Zenor. After the deed had been delivered to Zenor, he returned it once or twice. The deed was in the office of the club until about the day it was recorded, which was the latter part of 1919. Zenor said to the secretary of the club that if he would add to the agreement a note at the bottom re-

citing that the deed should read "125" instead of "150" and instead of "all times," "during operating period an average of" he would accept the deed and record it. The original contract called for 150 men. The interlineations were made in the contract in 1919, and Zenor stated that he would accept it if the secretary of the club would put that in, which he did. No member of the appellant was there at the time, and the secretary of the club did not notify any member of the appellant that he was going to make the changes in the contract. There was never any resolution of the board of directors authorizing the secretary of the club to make the interlineations in the agreement that he did make after the same had been signed by Zenor and the president of the club. Zenor simply stated to the secretary that if he would make the changes in the contract as indicated, he (Zenor) would accept the deed as written.

Harry Kelley testified, among other things, that he had given land to other factories and donated money to them, and they had failed to comply with the representations with reference to continuous operation. He could not definitely ascertain the amount to which he had been damaged, and, if such a factory as was represented to him by Gill and Robinson would be built and operated by Zenor were not in fact built and operated as specified in his deed. he figured from his past experiences that his damages would be the amount of $4,000 that he was donating, which he placed in the deed as liquidated damages in case the conditions of the deed were not complied with by the grantee. During the year 1918 he did not pay any attention to whether the factory was complying with the terms of the deed, because the country was at war. After the World War was over he began to look into the question as to whether or not Zenor and the Model Window Glass Company were going to comply with the terms of the deed. He did not keep close track of them in 1919. In 1920 the factory operated until the 17th of May, and never again operated

that year. He had tenant houses close to the glass plant and found no tenants. The plant had been shut down through long periods. Since the execution of the deed he had sold only two lots out of approximately two hundred acres. He had never seen the contract between the club and Zenor until he called Zenor's attention to the fact that he had not complied with the terms of the deed. This was after January 1, 1921. He was not a member of the board of directors of the club, and knew nothing of its transaction with Zenor. The deed was executed by him in accordance with the understanding with Robinson, and delivered to the secretary of the club.

Leigh Kelley, vice-president of the appellant, testified that he was not a director of the club at the time the agreement between the club and Zenor was executed. He was familiar with the terms of the deed, but did not know that there was any agreement between the club and Zenor.

Zenor testified that they began the construction of the plant about the first of May, 1917, and began to operate it in December, 1917. In the construction of the plant they hired about 145 men daily. He and his associates had invested about $228,000 at the time his testimony was taken. During the years 1917, '18, '19 and '20 the appellant did not complain that he and his associates had not complied with the terms of the deed. The appellant did complain in 1921. Zenor made the contract with the club, and never at any time had any conversation with any representative of the appellant until after it raised objection. Witness did not know that the appellant was associated with the transaction in any way until he went to get the deed and contract. After he read the deed he returned it to the secretary of the club and refused to accept it, because it did not conform to the contract he had entered into with the club. The secretary assured him that everything would be satisfactory, and he then accepted the deed and placed it on

record. They started operating the plant in December, 1917, and finished in 1918, operating eighteen weeks. In 1918-1919 they operated twelve weeks—had operated just 52 weeks in three years. In 1918 his operations were interfered with by the government, and this interference ended on December 7, 1918. They did not operate the plant at all in 1920, because they did not have any labor and could not get it. They did not operate from 1920 to January 15, 1921, because the union labor organization would not let them. The plant was closed down from May 22, 1920, and did not start up again for a period of eighteen months. During the period when the plant was closed down in 1918 he did not employ 125 men, or 150 either, and did not have a pay-roll amounting to six hundred dollars. The most men he ever employed at any time was 146. Ordinarily 128 men would be employed in his plant. During all the period that he was closed down he was trying to get a working scale from the union. Operating periods were fixed by the union. There was testimony tending to prove that prior to 1917 it was customary to run glass plants about eight or nine months in each year, sometimes ten.

1. The consideration of the appellant's deed to Zenor was $7,000, $3,000 of which was to be paid in cash, which was paid, and the remaining $4,000 was to be liquidated by complying with the conditions expressed in the deed. The undisputed testimony shows that these conditions have not been complied with. The testimony of Zenor himself conclusively proves that the conditions specified have not been fulfilled by him or his associates.

In *Stanley* v. *Schwalby,* 162 U. S. 256-257, it is said: "A valuable consideration may be other than the actual payment of money, and may consist of acts to be done after the conveyance." The testimony of Kelley shows clearly that the acts specified by appellant to be done by the grantee in its deed, in lieu of the $4,000 which was the balance of the consideration named, were estimated by him to be worth at least that sum, and that, in desig-

nating these acts, it was his intent that, upon a failure upon the part of the grantee to perform them, the grantee should pay to him the sum of $4,000. It occurs to us that the testimony of Kelley and the recitals set forth in the deed prove that a failure to perform the conditions would result in damages to appellant in the balance of the purchase money unpaid fixed as the liquidated sum of such damages. The damages, in their nature, were uncertain and not easily estimated, but nevertheless would at least be equal to the sum of $4,000, and that sum was specifically named by him to cover his damages, in addition to the cash consideration of $3,000, making the whole purchase money $7,000, for which sum the appellant reserved a lien on the land conveyed. See *Nevada County Bank* v. *Sullivan,* 122 Ark. 235.

This court has several times ruled that a vendor's lien will not arise to secure the performance of an act the nonperformance of which would make a claim for unliquidated damages. *Harris* v. *Hanie,* 37 Ark. 348; *Bell* v. *Pelt,* 51 Ark. 433; *Salyers* v. *Smith,* 67 Ark. 526; *Cox* v. *Smith,* 93 Ark. 371. But this is not that sort of an action. On the contrary, it is an action to recover a liquidated sum which the deed specifies may be recovered in case certain acts are not performed, which sum was named and clearly considered and intended by the parties to the deed as part of the purchase money. The case at bar, under the allegations of the complaint and the testimony adduced in support thereof, is brought clearly within the doctrine announced in *Cox* v. *Smith, supra,* where we said: "If this sum stipulated to be paid in the event of the nonperformance of the contract on his part shall be considered in the nature of damages, then it must be held to be liquidated damages, for which he is liable. * * * But this is not a claim for unliquidated damages; it is a debt for unpaid purchase money, the amount of which is definitely fixed. And where such debt for the purchase money may be paid in work or services, the vendor's lien therefor does exist, and may

be enforced if such work is not done or the services rendered.'' Citing *Young* v. *Harris,* 36 Ark. 162, and *Nix* v. *Draughon,* 54 Ark. 340. See also *Winters* v. *Fain,* 47 Ark. 493; *Tupy* v. *Kocourek,* 66 Ark. 433.

In *Jarratt* v. *Langston,* 99 Ark. 438, we said: ''It has been held by this court that, if land is sold for a price or consideration not named, which it is agreed may be paid in the note of a third party, or in personal services, the vendor's lien therefor exists and may be enforced if the note is not delivered or the services rendered.'' Since we have concluded that this should be treated as an action to enforce a vendor's lien for the purchase money, what we have already said disposes of all the contentions made by learned counsel for the appellees to sustain the decree of the trial court, except that the appellees were excused from complying with the conditions expressed in the deed requiring certain acts to be performed in lieu of the payment of the unpaid purchase money by reason of untoward circumstances over which they had no control, caused by the World War and labor unions. The proof shows that the appellant waived the performance of the terms of the contract, which were made impossible by the war. The other hardships alleged as excuses for nonperformance cannot avail the appellees, according to the doctrine announced by this court in *Ingham Lbr. Co.* v. *Ingersoll,* 93 Ark. 447. The appellees hold the title and possession to this land under the deed of appellant, and they must pay the purchase price.

No issue is made in this record between the appellees and the Business Men's Club of Fort Smith, and hence it would not be germane here to discuss the effect of the agreement between the club and Zenor. It follows, from what we have said, that the court erred in dismissing the appellant's complaint for want of equity. For this error the judgment is reversed, and the cause is remanded, with directions to enter a decree in appellant's favor for the sum of $4,000, with interest from

the date of the institution of this suit, and that the same be declared a lien upon the real estate described in its complaint, and for such other proceedings, according to law and not inconsistent with this opinion, as may be necessary to enforce such decree.