**POWERS et al. v. JOHNSON (BLOCKER, Intervener).**

**POWERS v. JOHNSON et al.**

**Nos. 9868, 9869.**

Circuit Court of Appeals, Eighth Circuit. April 24, 1934.

Rehearing Denied June 2, 1934.

Will Steel and T. B. Vance, both of Texarkana, Ark., for appellants.

James D. Head, of Texarkana, Ark. (Ben E. Carter, of Texarkana, Ark., on the brief), for appellees.

Before STONE and WOODROUGH, Circuit Judges, and OTIS, District Judge.

WOODROUGH, Circuit Judge.

### Statement of the Case.

There are two appeals presenting the same issues and consolidated for hearing, one to reverse an order in bankruptcy hereafter referred to as the order of August 1, 1933, and the other to reverse an order in bankruptcy hereafter referred to as the order of August 11, 1933. The record discloses that the property here in controversy is an ice plant in Texarkana, Ark., consisting of certain real estate, machinery, and equipment. A. C. Powers owned this plant, and on August 7, 1931, he agreed to sell it to George E. Wells for a consideration of $12,500 in cash and $12,500 par value preferred stock of the Interstate Service Corporation. Both the cash and the stock were to be put up with the State National Bank of Texarkana as trustee, and it was agreed that, when the title was approved, that bank should pay off a mortgage which it held against the property and certain accounts and taxes and turn the balance of the cash over to Powers together with the preferred stock.

There is no controversy but that the money part of the consideration was paid and applied as per the agreement. Certain stock was also put up with the bank for delivery to Powers.

Powers executed a deed conveying the property to Wells under date of August 10, 1931. This deed recited receipt of the full consideration, and was delivered to George E. Wells on or about August 10, 1931. The deed does not recite the retention

of any vendor's lien, but does recite that the full consideration had been paid. This deed was recorded on February 20, 1932.

Wells organized the Powers Ice Company, an Arkansas corporation, and conveyed this property to it by warranty deed dated February 29, 1932, and recorded March 12, 1932.

The Powers Ice Company on September 1, 1931, conveyed the property to Will Steel as trustee to secure $15,000 in notes payable to J. D. Head. This deed of trust was recorded on January 7, 1932. The Southwest Public Service Corporation filed a claim in the bankruptcy court alleging that it was the owner of the notes secured by said deed of trust, and said claim was allowed as a secured claim on March 28, 1933.

As above stated, certain stock was delivered to the State National Bank to be turned over to Powers as a part of the consideration for his conveyance of this property to Wells. For reasons not here material this stock was not delivered, and on September 22, 1932, Powers filed a replevin suit in the circuit court of Miller county, Ark., against the State National Bank to recover $12,500 of 7 per cent. preferred stock of the Interstate Service Corporation. The complaint alleged that this stock was the property of Powers by virtue of his contract of sale of said ice plant, and that the same was being unlawfully detained by the bank, and plaintiff sought to recover said stock or its value and damages for the unlawful detention thereof. On October 11, 1932, the bank answered in the replevin suit and alleged that it was a mere stakeholder and that it was on that day filing a bill of interpleader in the chancery court of Miller county, Ark., against all the persons interested in said stock, and asked that said replevin suit be transferred to the chancery court. On the same day the bank did file its interpleader against Powers, Wells, and the Powers Ice Company setting up the contract of sale and alleging that the property involved had been transferred to the Powers Ice Company and that, in accordance with directions given to it at the time the stock was deposited, it had tendered $10,000 of the stock to Powers, who had refused to take it. The bank asked that Powers, the ice company, and Wells be compelled to litigate any controversy between them with reference to the stock and that it be permitted to deliver the stock into court and be discharged.

On October 18, 1932, Wells and the ice company filed their answer, in which, among other things, they sought certain relief and damages against A. C. Powers.

On November 22, 1932, which was less than four months prior to the date when the Powers Ice Company was adjudicated a bankrupt (said date being March 18, 1933), Powers filed his separate answer to the interplea of the bank in which he denied most of its allegations, and on the same day filed an answer to the cross-complaint of Wells and the ice company, and also on the same day, to wit, November 22, 1932, which was less than four months prior to the bankruptcy, Powers filed a cross-complaint against George E. Wells, Inc., George E. Wells, Interstate Service Corporation of Delaware, Charles M. Conway, Powers Ice Company, J. D. Head, and Will Steel; the said Head and the said Steel being the parties payee and trustee, respectively, under the deed of trust above referred to and under which the Southwest Public Service Corporation alleged in the bankruptcy court it was entitled to a secured claim, which claim was allowed by the referee. In this cross-complaint Powers alleged that the 7 per cent. preferred stock of the Interstate Service Corporation, which was to be a part of the consideration for his conveyance of the ice plant property to Wells, was falsely and fraudulently represented by said Wells and others to Powers to be of the par value of $12,500, and that it was worth face value and would yield 7 per cent. per annum and that it was then paying dividends; that he relied on said representations and conveyed his property and that said representations were untrue and known to be untrue. He alleged that the cash consideration was paid; he alleged that the stock which was to be paid to him was of no value whatever. The relief asked for by him was that he have judgment against the Interstate Service Corporation, Charles M. Conway, George E. Wells, Inc., J. D. Head and Will Steel for the sum of $12,500, together with 6 per cent. interest from August 7, 1931, and that the same be declared a vendor's lien against the property in his favor prior and superior to any claim by reason of the deed of trust to Will Steel as trustee for J. D. Head. (The chancery court subsequently dismissed for want of equity the cross-complaint in so far as it affected James D. Head and Will Steel.) Powers asked in the alternative that, if it should be found that he was not entitled to a vendor's lien, he have judgment for $12,500 as damages for deceit in the sale of said stock.

The cross-complaint of Powers was an-

swered by Wells, Conway, Powers Ice Company, Head, and Steel. The allegations of the cross-complaint were denied, and it was alleged that, after Powers had conveyed the property to Wells and Wells had conveyed it to the Powers Ice Company, the Powers Ice Company borrowed $15,000 on the property from the Southwest Public Service Corporation, and that the deed of trust to secure said loan was executed to Will Steel as trustee for Head and the notes were executed to Head and by him indorsed and transferred to the Southwest Public Service Corporation. All the allegations as to false representations were denied.

On November 23, 1932, which was also within four months prior to bankruptcy, there was filed a lis pendens notice, purporting to give notice of Powers' cross-complaint.

This interpleader suit came on for trial in the chancery court of Miller county on January 7, 1933. The bank then tendered into court the stock certificates in its possession, and it was then discovered that they were not for stock in the amount of $12,500 par value, but were for 125 shares of no par value $7 series preferred stock. The chancery court on January 7, 1933, entered its decree. This decree recited a hearing on the pleadings and oral testimony. The court found that the failure to deliver par value stock constituted a material breach of the contract and that Powers was entitled to judgment against Wells and the Powers Ice Company for $12,500 less $409.88, and "that said judgment should be declared an equitable vendor's lien against the ice plant property prior in right and equity to any claim of interest of George E. Wells, Powers Ice Company or the Interstate Service Corporation thereto." The decree ordered that Powers have and recover of and from Wells and the ice company the sum of $12,090.12, with interest, and that said judgment be an equitable vendor's lien against the property, and that, in the event the judgment be not paid within ninety days from and after January 7, 1933, the property be condemned to be sold, and appointed C. M. Blocker as commissioner in chancery to make the sale. Powers' cross-complaint against Conway, Head, George E. Wells, Inc., and Steel was dismissed for want of equity, as was also the complaint against the Interstate Service Corporation.

On March 18, 1933, the Powers Ice Company was duly adjudicated a bankrupt. On the same day the referee appointed David B.

Johnson as receiver, and Johnson thereupon took over from the Powers Ice Company the actual physical possession of the property involved in the controversy. He found Ted Miller, local manager of the Powers Ice Company, in possession of the property, and took it over from him. He posted notices showing that the property was in the possession of the bankruptcy court. There were no notices showing that any one else claimed to be in the possession of the property. Miller testified that he was the manager for the Powers Ice Company and as such had been in the actual possession of the property from August 8, 1931, until March 18, 1933, and that during this time no one had made any claim on him for the possession of the property, and that no one had ever attempted to take the possession from him, and that no officer of any court had come to the property to take possession of it or to attempt to take possession of it or had attempted to levy any writ of attachment on the property prior to the time when the receiver took possession on March 18, 1933. On March 28, 1933, David B. Johnson was elected as trustee for the bankrupt estate and duly qualified as such. He has been in actual possession of the property first as receiver and then as trustee at all times since March 18, 1933.

On April 7, 1933, C. M. Blocker, as commissioner in chancery, published an advertisement to the effect that he would on May 2, 1933, sell this property under the decree of the chancery court of January 7, 1933. On April 11, 1933, the trustee reported this fact to the bankruptcy court and asked that the court restrain the sale or take such steps as it might consider proper to protect the possession of the property in the interest of the creditors. On the same day the referee issued an order directing A. C. Powers and his attorney, T. B. Vance, to appear and show cause on April 18, 1933, why they should not be enjoined from further proceedings under the chancery court decree. On April 18, 1933, Powers and Vance filed their response to the show cause order, said response being in the nature of a plea to the jurisdiction of the bankruptcy court. The response described the proceedings in the chancery court and its decree, alleged that the lien of the decree was valid against the trustee in bankruptcy and that it amounted to more than the value of the property so that the trustee had no interest. Nothing was stated as to any other lien against the property.

The referee set the hearing on said matter for April 22, 1933. The referee died on

April 21, 1933, and the matter was not heard until April 27, 1933, when it was heard before H. M. Barney as referee. On April 27, 1933, the referee made an order enjoining Powers and Vance from proceeding with the sale of the bankrupt's property under the state court's decree. The referee found that neither the state court nor its officers or agents had ever been in possession of the property or attempted to exercise any dominion thereover, and that the bankruptcy court took actual physical possession on March 18, 1933, and had continued in actual possession ever since, that the sale of the property under the state court decree would cloud the title and tend to depreciate the value of the property and interfere with the orderly administration of the bankrupt estate and the referee ordered that Powers and Vance be restrained and enjoined from themselves in person or through any agent or attorney in any manner or form proceeding with the sale of said property under said state court decree.

Powers and Vance filed a petition for review from this order.

Thereafter, on May 19, 1933, C. M. Blocker, the commissioner in chancery, filed with the referee his petition asking that the property be delivered to him. This petition was never acted upon by the referee. It was again filed before the District Court.

On July 17, 1933, the petition of Powers and Vance for review was heard before the District Court. C. M. Blocker, as commissioner in chancery, appeared before the court and asked the court's leave to file his petition, which had not been acted upon by the referee, and the court permitted this to be done. In this petition Blocker recited that he filed the same under the instructions of the state court, and he prayed that the trustee be ordered to turn the property over to him as commissioner of the state court.

The trustee on the same day filed his response to the petition of Blocker in which he denied certain allegations of fact set up in Blocker's petition, and also denied that the property was ever in the possession of the state court and alleged that the suit in the state court was not a suit in rem but a suit in personam and that the court did not take possession of the property by any attachment or receivership proceeding. The trustee also alleged that on March 28, 1933, the Southwest Public Service Corporation had appeared in the bankruptcy court and filed its proof of a secured claim against the property in the sum of $14,480.88, represented by notes and secured by deed of trust; said claim of the Southwest Public Service Corporation was allowed as a secured claim against the property on March 28, 1933; that the holder of the mortgage lien has come into the court and submitted its claim and had the same passed upon by the court; and that to permit the property now in the possession of the court to be sold by the state commissioner in chancery would prevent the court from making any sale of the same, as the purchaser would be compelled to liquidate with the purchaser under the chancery court decree, and a multiplicity of lawsuits would result. On August 1, 1933, the District Court made and entered and filed its memorandum opinion and order on said petition for review and said petition of C. M. Blocker as commissioner. The court found that the decree of the chancery court was rendered on a cross-complaint which was filed on November 22, 1932; that the Powers Ice Company was adjudicated a bankrupt on March 18, 1933, and that Johnson was appointed as receiver and on that day took actual physical possession of the property and has continued in actual possession thereof and operating the same ever since, first as receiver and then as trustee; that neither the state court nor its officers or agents had ever been in possession of the property or attempted to exercise any dominion thereover. The court found that no injunction should have been issued against Powers and Vance and that the action of the referee did not restrain the state court commissioner from making the sale. The court found, however, that the petition of the state court commissioner, that the property be turned over to him, should be denied upon the ground that the lien asserted in the state court was created by a judgment obtained upon a cross-complaint filed within four months of bankruptcy. The petition of C. M. Blocker, commissioner, was denied, and the court ordered that the trustee retain possession of the property and directed the trustee to take such steps as would enable him to bring about a prompt and speedy administration of the bankrupt estate.

Thereafter on August 3, 1933, C. M. Blocker, as commissioner in chancery, again advertised for sale under the state court decree the property involved in this controversy. On August 8, 1933, the trustee filed with the District Court his petition praying that the court enjoin the said C. M. Blocker as commissioner from selling or attempting to sell the property. On August 11, 1933, pursuant to notice theretofore duly served upon

the commissioner, this petition was presented to the District Court. At this hearing Powers appeared and filed his intervention in the nature of a plea to the jurisdiction, asserting that the bankrupt court had no jurisdiction to enjoin the commissioner, declaring that his lien under the state court decree was valid against the trustee and that there was no other lien, but his lien exceeded the value of the property so that there was no interest in the trustee, and asking that no injunction be ordered which would in any wise limit or restrain the state court commissioner. At the hearing on this petition and plea to the jurisdiction, the full history of the state court proceedings was presented to the District Court. After this hearing the District Court on August 11, 1933, entered an order permanently enjoining C. M. Blocker as commissioner in chancery from selling or advertising for sale the property involved in this controversy.

C. M. Blocker, as commissioner, has not appeared, but the court granted to Powers and Vance an order of severance and granted to them an appeal from the order of August 11th.

## Opinion.

The orders in bankruptcy herein of August 1, 1933, and August 11, 1933, sought to be reversed by these appeals, were predicated upon the provisions of the Bankruptcy Act (section 67f) found in section 107 (f), title 11, USCA, as follows:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property ⸱⸱ * ⸱⸱ shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate. * * * "

The orders reflect the position of the trial court that the lien of appellants, Powers and Vance, upon the property in the possession of the trustee in bankruptcy, was a lien obtained by them through legal proceedings in a suit begun and by decree rendered against the bankrupt in the state court within four months prior to the filing of the petition in bankruptcy against the Powers Ice Company, and therefore null and void when the Powers Ice Company was adjudged a bankrupt.

The appellants contend that Powers had a vendor's lien for the unpaid purchase price

of the property from the date of the sale to the Powers Ice Company. The appellants further contend that the chancery suit in the state court was a suit for the enforcement of the vendor's lien, and therefore not of the class of proceedings subordinated to the federal bankruptcy law. Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060; McGonigle v. Foutch (C. C. A.) 51 F.(2d) 455.

We are bound to determine the nature of the lien decreed by the state chancery court in accordance with the Arkansas law (Fisher v. Shropshire, 147 U. S. 133, 13 S. Ct. 201, 37 L. Ed. 109; Farrell v. Wysong [C. C. A.] 246 F. 281) and have accordingly examined the pertinent Arkansas decisions. We are satisfied that in Arkansas one who sells and conveys his lands for a stipulated money price to be paid in whole or in part in the future has a vendor's lien on the lands for the unpaid purchase price. Shall v. Biscoe, 18 Ark. 142; Linthicum v. Tapscott, 28 Ark. 267; Waddell v. Carlock, 41 Ark. 523; Stephens v. Shannon, 43 Ark. 464; Sheppard v. Thomas, 26 Ark. 617; Hutton v. Moore, 26 Ark. 382; Jones v. Doss, 27 Ark. 518; Hecht v. Spears, 27 Ark. 229, 11 Am. Rep. 784; Johnson v. Nunnerly, 30 Ark. 153; Chapman v. Chapman, 55 Ark. 542, 18 S. W. 1037; Mayes v. Hendry, 33 Ark. 246; Jarratt v. Langston, 99 Ark. 438, 138 S. W. 1003; Miller v. Mattison, 105 Ark. 201, 150 S. W. 710; Harrah v. Ayres, 133 Ark. 513, 202 S. W. 823. But in the case at bar the appellant Powers did not sell his property for a stipulated money price. The consideration for his sale was $12,500 in money (which he has received in full), but the remainder of the purchase price was payable in corporate stock. The lien accorded him by the decree of the state chancery court was based upon the failure of his purchaser to deliver corporate stock according to the sale contract. We are cited to no Arkansas decisions holding that a vendor's lien arises in that state to secure a promise to perform services or to deliver specific articles in part payment for lands or chattels. In general, no vendor's lien accrues to the vendor in sales of that kind. Harris v. Hanie, 37 Ark. 348; Bell v. Pelt, 51 Ark. 433, 11 S. W. 684, 4 L. R. A. 247, 14 Am. St. Rep. 57; Salyers v. Smith, 67 Ark. 526, 55 S. W. 936; Harrah v. Ayres, 133 Ark. 513, 202 S. W. 823, 824; Jarratt v. Langston, 99 Ark. 438, 138 S. W. 1003; Kelley Trust Co. v. Zenor, 159 Ark. 466, 252 S. W. 39.

In Harris v. Hanie, supra, the court stated:

"The deed from Hilliard Harris to Estes, for which the cotton obligations were given, is not set forth; and there is no allegation that a lien was retained upon the land to secure the delivery of the cotton. Was there an equitable vendor's lien? That is created by equity, and is unknown at law. It arises to secure the payment of the purchase-money, but does not arise to secure the performance of any act, the breach of which performance would make a claim for unliquidated damages. In such cases it is considered that the obligation for performance, with the legal right to damages on breach, is taken itself as payment. Whilst Courts of Equity will create the lien for amounts which are liquidated, they decline the double task of liquidating the damages and then declaring a lien in favor of parties who have not reserved one in the deed. This, though, sometimes questioned, and first held in very strong cases of obligations requiring great length of time for performance, has come now to be a recognizable principle, both in England and in those American States which have not rejected the doctrine of the vendor's lien altogether. Parrott v. Sweetland, 3 Mylne & Keene, 655; Brawley v. Catron, 8 Leigh [Va.] 522; Arlin v. Brown, 44 N. H. 102; Payne v. Avery, 21 Mich. 524; McCandlish v. Keen et al., 13 Grat. [Va.] 615."

Quoting from Harrah v. Ayres, supra:

"He claims the lien under said clause in the original contract providing that he should 'receive the rental of the Chula Vista property beginning March 1, 1914.' This court has decided that a vendor's lien 'arises to secure the payment of the purchase money, but does not arise to secure the performance of any act, the breach of which performance would make a claim for unliquidated damages.' Harris v. Hanie, 37 Ark. 348; Salyers v. Smith, 67 Ark. 526, 55 S. W. 936; Jarratt v. Langston, 99 Ark. 438, 138 S. W. 1003.

"In one of the cases above cited we quoted with approval the following rule stated by Prof. Pomeroy: 'There must be a certain, ascertained, absolute debt owing for the purchase price; the lien does not exist in behalf of an uncertain, contingent, or unliquidated demand.' 3 Pomeroy, Eq. Jur. 1251."

In Jarratt v. Langston, supra, with reference to a sale in which certain bank stock formed part of the consideration, the court said:·

"In effect, the complaint alleged that the appellee perpetrated a fraud upon appellant in inducing her to take this worthless stock, and that it did not result in the actual payment of that part of the purchase price. Appellant had the right to rescind the agreement to take this stock, if worthless, on account of this alleged fraud of appellee, by which rescission the part of the purchase price for which it was taken would remain entirely unpaid; and, this portion of the purchase price being definitely fixed and ascertained and unpaid, equity would give an implied lien upon the land for its enforcement. If the stock, however, had an actual substantial value, then the appellant would only have a claim for damages for the alleged deceit perpetrated upon her, which, being unliquidated, there would be no equitable lien upon the land therefor. In such event, the appellant would only be entitled to a personal judgment for any damages to which she might be entitled."

It would appear from the decree of the chancery court in this case that, after an award of damages had been made to the vendor of lands for breach of such a sale contract as is here involved, then a decree may be .entered according to Arkansas law providing that the judgment for damages may be decreed to constitute an equitable lien upon the property sold. But such a lien so obtained is plainly obtained by judicial proceedings. Where, as in this case, it was obtained within four months of the adjudication of bankruptcy, it is clearly void under the provision of the Bankruptcy Act against the trustee in bankruptcy.

We have also examined the Arkansas decisions concerning the liens which accrue to vendors of lands for the unpaid part of the purchase price in sums of money certain. We are persuaded that the weight of authority in Arkansas is to the effect: That "the vendor's lien is a mere creature of Equity, having really no, substantial existence until the courts are invoked to declare it, for the purpose of satisfying a debt, * * * not a right of property, but a mere remedy." Hecht v. Spears, 27 Ark. 229, 11 Am. Rep. 784; Linthicum v. Tapscott, 28 Ark. 267; Harris· v. Hanie, 37 Ark. 348; Waddell v. Carlock, 41 Ark. 523. That the "equitable lien of the vendor is not, however, an estate in the land itself, but is a charge, or right which has its inception only on bill filed." Stephens v. Shannon, 43 Ark. 464; Howes v. King, 127 Ark. 511, 192 S. W. 883. That it is not the subject of assignment or transfer and does not follow the debt, and that it is an inchoate right and its inception is from the date of the filing of the bill and not before.

Sheppard v. Thomas, 26 Ark. 617; Hutton v. Moore, 26 Ark. 382; Jones v. Doss, 27 Ark. 518; Johnson v. Nunnerly, 30 Ark. 153; Chapman v. Chapman, 55 Ark. 542, 18 S. W. 1037; Hecht v. Spears, 27 Ark. 229, 11 Am. Rep. 784; Shall v. Biscoe, 18 Ark. 142.

■ Although there are expressions in the decisions of the state court to the effect that the lien of the vendor for the unpaid part of his purchase price is good as against all but innocent purchasers for value from the vendee and these expressions might be deemed inconsistent with the holding that the lien has its inception only upon the filing of a bill or upon the decree of a court, we think the weight of Arkansas authority sustains our view that, where a vendor's lien is not sued for or obtained until within four months of bankruptcy, it must be deemed void under the Bankruptcy Act. Compare Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060; Farrell v. Wysong (C. C. A.) 246 F. 281; McGonigle v. Foutch (C. C. A.) 51 F.(2d) 455.

The appellants have cited the decision of this court in Farrell v. Wysong, 246 F. 281, 282, in which we held that section 67f of the Bankruptcy Act (1898) was not applicable to a decree to enforce a vendor's lien arising under the laws and decisions in Colorado. We said:

"The courts of the United States will enforce grantor's and vendor's liens if in harmony with the jurisprudence of the state in which the action is brought."

We held that in Colorado the lien was created as of the date of the contract of sale. The holding to the contrary in this case that, by reason of the nature of the sale contract involved and the state of the applicable law in Arkansas, the lien was obtained solely through the judicial proceedings differentiate the cases.

The decision of this court in Rader v. Star Mill & Elevator Company, 258 F. 599, also relied on by the appellants, is not controlling here. In so far as it recognizes the existence of a vendor's lien which was enforced and not obtained in the equity suit under consideration, the opinion rests upon the statute of Oklahoma (Rev. Laws 1910, § 3847) quoted on page 604.

■ It is contended by the appellants that the District Court was without jurisdiction to enjoin the sale threatened to be made under the state court's decree in a summary proceeding. Our decision that the proceedings in the state chancery court were not proceedings merely to enforce a lien, but were proceedings to obtain a lien through legal proceedings, disposes of the contention adversely to the appellants. Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060; Clarke v. Larremore, 188 U. S. 486, 23 S. Ct. 363, 47 L. Ed. 555; Remington on Bankruptcy (3d Ed.) § 1905. The language of the Supreme Court in Straton v. New, supra, page 322 of 283 U. S., 51 S. Ct. 465, 467, is applicable:

"And as the lien created by a judgment entered within four months is avoided, the court of bankruptcy has jurisdiction to administer the property regardless of the lien and will restrain the prosecution of an action to enforce it."

■ The appellants also contend that, in addition to the lien which they have asserted against the property in controversy, the creditor Southwest Public Service Corporation has a lien on the same property in the amount of $14,480.88 while the value of the property as found by the bankruptcy appraisers is only $10,000. They contend, that it was the duty of the trustee to disclaim any interest in the property and of the bankruptcy court to refuse to take hold thereof or attempt to administer it because there was no interest in the general creditors. Generally speaking, it may be said that, where a particular property belonging to a bankrupt is hopelessly incumbered by admitted liens valid in bankruptcy, the trustee should not administer it except with the consent of the lienholders, and it is not the function of the bankruptcy court to assume jurisdiction of controversies between third parties in which the trustee is not concerned. In re American Magnestone Co. (D. C.) 34 F.(2d) 681; In re Harralson, 179 F. 490, 29 L. R. A. (N. S.) 737 (C. C. A. 8); In re Hosmer, 233 F. 318 (D. C.); In re Watts, 19 F.(2d) 526 (D. C.); In re Cutler & John, 228 F. 771 (D. C.); In re Moore Planting Co., 237 F. 737 (C. C. A. 5); Chauncey v. Dyke Brothers, 119 F. 1 (C. C. A. 8).

Study of the record, however, convinces that the appellants are not in position to ask reversal on this ground. In their resistance to the referee's first order of injunction, they said nothing about there being any other lien upon the property than the lien claimed by themselves, and they compelled a trial upon the validity of their lien. In their resistance to the second order of injunction they again compelled determination of the question of the validity of their lien under section 67f of

the Bankruptcy Act, and alleged that their own lien amounted to more than the value of the property and therefore that the general creditors had no interest, but they also alleged:

"That there is no other lien claimant and that no such lien claimant has established his claim by any proper order of the court or otherwise."

"That the only lien which exists is the said A. C. Powers vendor's lien."

The record also reflects that the trustee had reported and claimed that he would be able to obtain a bid on the property in an amount greater than the lien of the Southwest Public Service Corporation. There is no evidence or finding in the record to establish that, in fact, the liens on the property so far exceeded the value thereof that the general creditors had no interest therein, and, the appellants having invoked an adjudication in the bankruptcy court upon the question of the validity of their lien under the bankruptcy law, the record would not justify a decision here in appellants' favor on their contention.

It appearing that the lien obtained by appellants by judicial proceeding within four months of bankruptcy was null and void upon bankruptcy adjudication being made, the injunction was rightly issued against further proceedings in the state court to enforce the lien, and the trustee in bankruptcy was properly ordered to proceed with the administration of the property in bankruptcy for the benefit of the creditors, and the orders appealed from are affirmed.